## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEANNA J. CHANG, | : |
| **Plaintiff,** | : |
| v. | :     Civ. A. No.: 08-cv-00871 (PLF) |
| DISTRICT OF COLUMBIA DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, *et al.* | : |
| **Defendants.** | : |

## PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

Defendants' Opposition states that Plaintiff's Stop Work Order ("SWO") was issued on May 19, 2008, when in fact, the SWO was issued on March 19, 2008. While this may merely be a typographical error, it goes to the very crux of this matter – the patent unreasonableness of Defendants' steadfast refusal to provide a meaningful opportunity for a hearing in this three month period; the patent unreasonableness of Defendants' attempts to impose a $2000 fine on Plaintiff for a violation of the DC Municipal Regulations ("DCMR") which simply does not exist; Defendants' failure to carry out their statutorily-defined duties as public officers; and the inadequacy of an administrative process wherein Plaintiff has been deprived of substantial property rights for three months without an opportunity for a fair hearing on the matter.

Defendants' acts (and failures to act) have created an impossible situation for Plaintiff – she has been denied the opportunity for a fair and just hearing process, she cannot renew her permits because the permitting officers say the permits are valid, yet she cannot work because Defendants take the position, unsupported by any statute or regulation, that her building permit expired after twelve months. This action is not brought merely from frustration with the process,

it is brought because of the serious and irreversible consequences that Defendants' actions are having on Plaintiff. As the length of time that work is stopped increases, so too do the amount and severity of Plaintiff's damages. Plaintiff has been unable to refinance her house solely because of the condition the SWO has left her house in, has been living in conditions which few would find habitable, (and are likely in violation of the Housing Code), has not been able to entertain and lodge family members whose visit was planned months ago, and has lost thousands of dollars as a result, not to mention the vacation days and numerous hours spent attempting to resolve this matter. A preliminary injunction will ensure that harm to Plaintiff is minimized while the parties litigate the appropriateness of the SWO.

## I.      Neither Younger Abstention nor Exhaustion of Administrative Remedies Bar This Court's Consideration of Plaintiff's Case

### A.      Equitable Restraint is not Warranted in this Case

Contrary to Defendants' implication that federal courts should automatically exercise "equitable restraint" pursuant to Younger unless there is a showing of "extraordinary circumstances," there is equally compelling case law indicating that the Younger doctrine of "equitable restraint" is very narrow, and should be invoked in only exceptional cases. "[R]efraining 'from the exercise of federal jurisdiction is the exception, not the rule,'" and federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Bridges v. Kelly, 84 F.3d 470, 475 (D.C. Cir. 1996) (quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813, 817 (1976) (internal quotation marks omitted)); Silverman v. Barry, 727 F.2d 1121, 1123, n.4 (D.C. Cir. 1984). Equitable restraint under Younger should be exercised sparingly, since only exceptional circumstances justify a federal court's refusal to decide a case in deference to the States." Bridges, 84 F.3d at 476 (quoting New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 364

2

(1989) (internal quotation marks omitted)).  Accordingly, a "rigid" three-part test must be satisfied:  (1) there must be ongoing state proceedings that are judicial in nature; (2) the state proceedings must implicate important state interests; and (3) the proceedings must afford an adequate opportunity in which to raise the federal claims.  Bridges, 84 F.3d at 476.

Regardless of whether this Court considers equitable restraint under Younger as the exception or the norm, it is clear that equitable restraint is not appropriate in this case.  Assuming there is an ongoing state proceeding that is judicial in nature,[1] those "proceedings must afford an adequate opportunity in which to raise the federal claims." Id. at 476.  In Bridges, the DC Circuit found that an administrative hearing in conjunction with the ability to seek judicial review did *not* present an adequate forum in which to fully and fairly pursue his federal claims, and declined to abstain from hearing the case. Id. at 476-77.  If the system set up by the state is not capable of granting the Plaintiff the full relief sought, it is improper for a federal court to abstain from hearing the case. Id. at 477.  Because the plaintiff in Bridges sought compensatory and punitive damages, which could not be granted by the administrative court, nor could the DC Superior Court consider requests for relief that were not before the administrative tribunal, the DC Circuit held that "equitable restraint" was not proper.

The same is true in the instant case.  The only issue to be addressed in a proceeding at OAH would be whether there was a violation of the DC Code that would warrant the SWO.  The OAH would not be ruling on the constitutionality of the SWO, or the constitutionality of the procedures for appealing the SWO.  Nor would OAH be authorized to grant the compensatory

---

[1]  First it is not clear that there is an ongoing state proceeding that is judicial in nature.  Plaintiff denied the Notice of Infraction on April 8, 2008.  The next step in the administrative process for resolution of the SWO appears to be an appeal to OAH.  As of the date of this filing, Plaintiff has not been contacted by OAH regarding scheduling a hearing, procedures for the appeal process, etc.  Plaintiff is unaware of any substantive action that OAH has taken on the SWO.  Thus, it is not clear that there is an ongoing state proceeding.

and punitive damages being sought by Plaintiff for the violation of her constitutional rights. Because the issue at OAH is much more narrow than the issues involved in this case, and OAH does not have authority to award Plaintiff the full relief sought, equitable restraint under <u>Younger</u> would not be appropriate.

Finally, it simply makes no sense for this Court to refrain from hearing this case when one of the claims in this case is the inadequacy of DC's procedures generally, and the inadequacy of those proceedings as applied in this particular instance. There is no mechanism other than a request for a preliminary injunction for Plaintiff to receive timely relief from the SWO. Three months have passed, during which time Plaintiff has complied with the administrative procedures for addressing the invalid SWO. However, there has been no substantive action taken since April 8, 2008, over two months ago. DCRA took over one and a half months to forward the Notice of Infraction to OAH. OAH appears to have received the Notice of Infraction on May 20, 2008, but has taken no action on it in that time. There has been no scheduling of a hearing, no written notice that OAH has even received the Notice of Infraction, nothing. The DC Code does not provide time frames in which DCRA must forward the Notice of Infraction to OAH, nor does it provide time frames in which OAH must act. This failure to provide timely resolution of the matter is part and parcel of Plaintiff's due process claims. See Section II, below. To invoke <u>Younger</u>'s equitable restraint doctrine in a case where one of the fundamental questions is the constitutionality of DC administrative processes which do not provide parties with an opportunity to meaningfully and timely litigate claims, does not further any of the purposes of the <u>Younger</u> doctrine. Thus, in accordance with the strong policy weighing in favor of federal courts exercising their full jurisdiction, this Court should continue to hear this case on the merits.

B.      There is No Requirement That Administrative Remedies Be Exhausted

Similarly, Defendants' argument that Plaintiff is required to exhaust administrative remedies

is also in error.  It is well-established that exhaustion of administrative remedies is not required

when seeking redress for constitutional violations.  Patsy v. Board of Regents of Fla., 457 U.S.

496, 501 (1982); Heck v. Humphrey, 512 U.S. 477, 480 (1994); Tri County Industries, Inc. v.

District of Columbia, 104 F.3d 455, 462 (D.C. Cir. 1997); Silverman v. Barry, 727 F.2d 1121,

1123 n.3 (D.C. Cir. 1984).  Exhaustion is not required in cases where "the agency has very

clearly violated an important constitutional or statutory right."  Fitzgerald v. Hampton, 467 F.2d

755, (D.C. Cir. 1972) (quoting, Amos Treat & Co. v. SEC, 306 F.2d 260 (D.C. Cir. 1962)).  The

two cases cited by Defendants in support of their argument are not persuasive, since neither of

involves allegations constitutional violations.  See Myers v. Bethlehem Shipbuilding Corp, 303

U.S. 41 (1938); Ass'n of Flight Attendants – CWA, AFL-CIO, v. Chao, 493 F.3d 155 (D.C. Cir.

2007).  Defendants' arguments that Plaintiff's case is not ripe until administrative remedies have

been exhausted must fail.

**II.    Plaintiff is Likely to Succeed on the Procedural Due Process Claim**

As to whether Plaintiff is likely to succeed on the merits, Defendants' arguments are

similarly unconvincing.  Defendants argue that the process by which the SWO is reviewed by

Defendant Masoero, then Defendant Argo, then appealed to OAH is adequate to satisfy the

requirements of due process, citing 3883 Connecticut Ave., LLC v. District of Columbia, 336

F.3d 1068 (D.C. Cir. 2003).  Although 3883 Connecticut may appear at first blush to be on-point,

there are several distinguishing features that render it inapposite to the instant case.  First is that

the Plaintiffs in 3883 Connecticut argued that due process required a hearing *prior* to issuance of

the SWO.  Id. at 402.  Second is that DC followed its SWO appeal procedures, including the

deadlines, in 3883 Connecticut, but did not in the instant case. This, in conjunction with the fact

that the Plaintiffs in 3883 Connecticut never appealed the SWO to OAH gave the Court the

impression that resolution of the SWO could be had in a timely manner. The speed of the appeal

process was critical to the Court's conclusion: "the regulations provide for expedited post-

deprivation review before two District officials and then immediate appeal to the District Board

of Appeals and Review – a procedure that reduces the risk of protracted harm from a wrongly

issued order."[2] Id. at 402. In 3883 Connecticut, the first level of review was conducted within

the three day period. Dissatisfied with that response, plaintiffs filed their appeal with the

Director of DCRA. While the Director failed to rule on the SWO, plaintiff and DCRA continued

to exchange information which ultimately led to DCRA rescinding the SWO on its own.

Plaintiff never had to appeal to OAH for resolution of the SWO, so it was not faced with the

delays that accompany OAH review.

 The procedures available to Plaintiff in this case are similar to those in 3883 Connecticut, but

with one difference – the expeditiousness that was so critical to the Court's determination in

3883 Connecticut is wholly lacking. Plaintiff timely filed her Notice of Appeal, on March 21,

2008, two days after the SWO was issued. Despite the requirement that Defendant Masoero

respond within three business days, he did not respond until April 8, 2008.[3] After denying the

Notice of Infraction on April 8, 2008, the Notice of Infraction was to be forwarded to OAH for

what the 3883 Connecticut Court termed "immediate appeal." However, Plaintiff's Notice of

Infraction was not immediately appealed to OAH. Instead, Defendants sat on her Notice of

---

[2]  It appears that the SWO procedures in effect at the time 3883 Connecticut was decided were similar to, if not the same as, those in place currently, with the exception that the Board of Appeals and Review has been replaced by OAH.

[3] Plaintiff filed her Notice of Appeal with Defendant Argo on March 27, 2008.  Defendant Argo did not respond to that Notice.

Infraction for nearly six weeks.[4]  Despite denying the Notice of Infraction on April 8, 2008 while in the presence of Defendant Masoero, OAH did not receive it until May 20, 2008.  Moreover, Plaintiff has not been contacted by OAH regarding scheduling a hearing or for any other purpose.  During this entire time, Plaintiff has attempted to resolve the matter through requests for meetings, emails, etc., to no avail.  This is clearly not the expedited post-deprivation hearing process that the 3883 Connecticut Court based its findings of due process on.

What the instant process is more reminiscent of is the procedure that the DC Circuit found violative of procedural due process in Tri County.  After finding that Tri County had a substantial property interest in continuing construction without unfair interference, and noting that any interruption of construction is expensive, the Court found DC's procedures for appealing suspension of a building permit did not satisfy the requirements of procedural due process.  Tri County, 104 F.3d at 462.  In evaluating a process similar to that outlined above, the Court stated:

> Tri County could have sought to have the Director himself review his illegal act under [the DCMR]. . . which requires that an official within the DCRA review actions against a permit holder within three days and that the Director review any decision by that official within another three days.  Given that the reviewing official under both provisions would have been Cross himself, and that the rules appear to specify no minimum procedural entitlement for the aggrieved permit holder, these procedures do not advance the ball.  Finally, however, Tri County could have appealed to the Board of appeals and Review, which may provide a "hearing". . . .  Pending ultimate decision, the Board could have issued a stay of the Director's order, but there appears to be no assurance that any such stay would be issued promptly.  In short, then, there is provision for the correction of the sort of suspension issued by Cross, but uncertainty as to its speed.

Id. at 461 (internal citations omitted).  When balancing Tri County's substantial property interest in continuing construction without unfair interference, with the high risk of an erroneous

---

[4]  Plaintiff called OAH on May 16, 2008 to determine whether her file had been received.  OAH had no record of it at that time.  On May 16, 2008, Plaintiff sent an email to Defendants informing them of this, and requesting information as to the cause of the delay and when they intended to forward the file to OAH.  Exh. 1.  Plaintiff did not receive a response to that email from any of the Defendants, but did receive an email from Sarah Thigpen, a Staff Assistant at DCRA, indicating that the Notice of Infraction had been sent to OAH on May 12, 2008.  Exh. 2.  OAH finally received Plaintiff's Notice of Violation on May 20, 2008.

deprivation of rights, and DC's "negligible" interest in swift action, the Court found that Tri County had been deprived of property without due process of law. Id. at 461-62.

It is not disputed that Plaintiff has a property right in her building permit and the ability to continue construction without unfair intrusion by DC. DC's procedures for appealing an improperly issued SWO are not adequate to satisfy due process given Defendants' failure to abide by the time frames dictated the lack of deadlines applicable to the whole process to guarantee swift action, and the failure of OAH to even schedule a hearing. As in Tri County, the risk of an erroneous deprivation is high, and in fact Plaintiff has been deprived of her property interests erroneously, while DCRA's interest in swift action and stopping work at a house that is not a danger or nuisance to the public, is minimal. Therefore, as in Tri-County, the balancing test set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), results in a finding of an unconstitutional deprivation of property.

## III.     Plaintiff is Likely to Succeed on Her Substantive Due Process Claim

Finally, Defendants argue that Plaintiff's interpretation of the regulations governing expiration of building permits is unreasonable and therefore, the preliminary injunction should be denied because she is unlikely to succeed on the merits. In support of this argument, Defendants turn to canons of statutory construction and argue that DCRA is entitled to deference when interpreting regulations it is tasked with enforcing. Def's Opp'n at 8-9. Defendants' arguments fail for several reasons: (1) the statute is clear on its face, eliminating the need for rules of interpretation; (2) Defendants' interpretation of the regulations runs afoul of the very canon of construction they cite; (3) there is no evidence to suggest that DCRA does indeed interpret the DCMR to contain an automatic 12 month life of a building permit; and (4) agencies are not entitled to deference if their interpretation is unreasonable.

8

The two regulations at issue here state:

> **105.5 Expiration of Permit.** Any permit issued shall become invalid if the authorized work is not begun within one year after the permit is issued, or if the authorized work is suspended or abandoned for a period of one year, after the date work is begun.

> > **105.5.1 Extension of Permit.** Upon written request submitted by the applicant before a permit expires or lapses, the code official is authorized to grant extensions of time not to exceed six (6) months per extension. Not more than three extensions of time will be granted to any permit.

D.C. Mun. Regs. tit. 12A 105.5. 105.5.1. Though not very clear, Defendants seem to claim that these two provisions, when read together, provide for the automatic expiration of building permits after 12 months, and that Plaintiff's reading – i.e., that permits expire only if the work is not commenced within one year or is suspended for one year -- somehow renders some provision superfluous. Def's Opp'n. at 8-9.

There is no need to delve into complexities of statutory interpretation when the statute or regulation is clear on its face. "No canon of construction justifies construing the actual statutory language beyond what the terms can reasonably bear." Amoco Production Co. v. Watson, 410 F.3d 722, 734 (D.C. Cir. 2005) (citation omitted). Neither these sections, nor any other section, state that building permits expire after a year. Were such a provision to exist, it would be expected to be in the section entitled "Expiration of Permit." That section provides only that a permit becomes invalid if the work is not begun in one year or if work is suspended for one year. In the event that a permit is on the verge of expiring because work did not commence within one year or was suspended for one year, then the provisions of 105.5.1, governing extensions of permits, applies. There is no conflict or inconsistency between these provisions, nor is there any question as to their meaning. Defendants' claim that this reading "isolates Section 105.5 from

9

other relevant provisions of the code" is unclear. Defendants also appear to argue that Plaintiff's

plain reading of the regulations would render other provisions superfluous. Def's Opp'n at 9.

Again, this is not expanded upon, but it is interesting to note that if Defendants are correct that

permits automatically expire after one year, there would be no need for Section 105.5, since all

permits, regardless of whether construction had started or whether construction had been

suspended, would expire after one year. Thus, not only is Defendants' interpretation inconsistent

with the plain language of the statute, it is inconsistent with the very canons of construction they

cite, since there would be no need whatsoever for section 105.5 were their interpretation

accurate.

As for Defendants' argument that an agency's interpretation of its regulations is entitled

to deference, that is indeed true. But, again, only when those regulations are ambiguous and only

if the agency's interpretation is reasonable. Port Authority of NY and NJ v. Dep't of

Transportation, 479 F.3d 21, 27 (D.C. Cir. 2007). Moreover, it is not at all clear that

Defendants' interpretation is indeed the interpretation of DCRA. As noted in the Motion for a

PI, at least two publications put out by DCRA state that permits expire if work is not commenced

within a year or if work is suspended for a year, Plaintiff's building permit states the same thing.

See Exhs. 1, 7 and 8 to PI Motion. Moreover, employees in DCRA's permitting office do not

appear to have the same interpretation as Defendants, since they informed Plaintiff that her

permit was valid. Defendants have not provided a single piece of evidence supporting their view

or their interpretation that building permits expire after one year. The clear language of the

regulations does not support this view, nor do any of the publications put out by DCRA.

Defendants' arguments as to the validity of the building permit are entirely unpersuasive. The

denial of Plaintiff's property rights based upon a reading of the statute so clearly at odds with not

only the actual language of the statute, but information put out by the same agency, is gravely unfair, a "deliberate flouting of the law" and so shocking to the conscience as to constitute a violation of due process. See Tri-County, 104 F.3d at 459; George Washington University v. District of Columbia, 318 F.3d 203, 209 (D.C. Cir. 2003).

## IV.    **Plaintiff Has Suffered Irreparable Harm**

Contrary to Defendants' claims, their actions have cause immeasurable irreparable harm to Plaintiff. As a direct result of the invalid SWO and Defendants' failure to revoke the invalid SWO, Plaintiff has been unable to refinance her house. This is of critical importance, since she, like many other homeowners, has an adjustable rate mortgage that is scheduled to adjust beginning in December 2008. In order to avoid the higher rates, Plaintiff had been working with a mortgage broker to refinance the house for several months. In April or May 2008, Plaintiff's mortgage broker was able to find a 30 year fixed mortgage with a 5.9% interest rate and 0 points, which was substantially lower than interest rates had been for quite some time. Plaintiff met the qualification requirements for the loan, including credit score and debt-to-income ratio. However, after the appraiser came out on May 13, 2008 and saw the house, the bank refused to refinance her house because of its condition. Exh. 3, Email from Jeffrey Morelli dated May 22, 2008. Mr. Morelli attempted to find other loans that would accept the house in its current condition, and could find none. Id. To date, Plaintiff has not been able to refinance her house, and the adjustment date draws nearer and nearer. Interest rates have increased, and according to bankrate.com, rates for the same type of mortgage loan in the DC Metro area have increased to 6.25% -6.75%. Exh. 4. What those interest rates will be when the SWO is finally lifted and

11

construction started again is anyone's guess. The sole cause of her inability to refinance is the improperly issued SWO.[5]

Other irreparable harm suffered by Plaintiff is obvious from the photographs attached as Exhibit 10 to the PI Motion. Defendants' actions have caused Plaintiff to live in conditions that are wholly unacceptable. It is doubtful that the current condition of her home would meet DC's housing code, and yet, this is how Defendants have forced her to live for the past three months. The walls are open, allowing mice and other animals entry into her home. Mice have been spotted (and killed) with much more frequency since issuance of the SWO, and can often be heard running around at night when Plaintiff is trying to sleep. This is not a safe or healthy way to live, and it has all been caused by the improper actions of Defendants.

There is also some question as to whether DCRA is retaliating against Plaintiff for filing this action.[6] Plaintiff has suffered panic attacks, stress, anxiety, and depression as a direct result of Defendants' actions. Family members whose visit had been planned for months had to stay in hotels because of the condition of Plaintiff's house. Defendants' contention that there is no irreparable harm as a result of their actions is simply wrong.

---

[5] The construction which Defendants halted was supposed to be completed in three to four weeks from the start in early March. Therefore, the project would have been finished well before the appraisal for the refinancing was performed.

[6] Plaintiff owns another home in the District which she rents. On Monday May 16, 2008, she received an email from her tenants indicating that an inspector from DCRA had inspected the house and issued two Notices of Violation, with potential fines of $3000. One of the violations related to one of the tenants' automobiles, which is fully operational, and parked on Plaintiff's property, which the inspector found was "a nuisance caused by an abandoned auto that is dangerous to the health and safety of persons in or about premises." Exh. 5, Notice of Violation dated 6/12/2008. Other violations included having vegetation over 10", and having trash consisting of auto parts and rubber in the back yard. The "auto parts and rubber" appear to be an automobile bumper that was inside the fenced back yard, which could "constitute an unsanitary and unhealthy condition if it creates harbor or concealment (including hiding places for persons(s)). . . harbor for rodents and vermin, or a refuge for snakes, rats or other rodents. . . ." Id.

At a minimum, it is curious that DCRA inspectors would happen upon Plaintiff's property, given the scores of other homes and businesses in the area with more serious threats to public health and safety.

## CONCLUSION

Plaintiff has been stuck trying to resolve what should have been a straightforward matter of whether a building permit had expired for over three months. Despite plenty of evidence to the contrary, and none in support, Defendants have continued to insist that Plaintiff's building permit expired after one year. Plaintiff has been deprived of due process in both the inadequacy of the procedures provided for challenging the SWO, as well as in the substance of Defendants' claims. There has been no opportunity for a full and fair trial at OAH, nor is there any promise of one in the near future. The only way for Plaintiff to get immediate relief from the unduly oppressive and unconstitutional actions of Defendants is to grant her motion for a preliminary injunction. As set forth above and in her Motion for a PI, the requisite standard for issuance has been met, and the balance of factors clearly weighs in providing relief to Plaintiff in the form of allowing her to resume work on her house. Therefore, Plaintiff respectfully requests that this Court grant her motion for a preliminary injunction barring enforcement of the Stop Work Order issued on March 19, 2008.

Respectfully Submitted,

Dated: June 17, 2008

DEANNA J. CHANG
DC Bar No. 458381
1315 Irving St. NW
Washington, DC 20010
ph: 202.486.3221
email: morleymash@yahoo.com

13

**Chang, Deanna (ENRD)**

| | |
|---|---|
| **From:** | `Chang, Deanna (ENRD) |
| **Sent:** | Monday, May 19, 2008 10:02 AM |
| **To:** | 'don.masoero@dc.gov'; 'linda.argo@dc.gov' |
| **Cc:** | 'adrian.fenty@dc.gov'; 'grahamwone@gmail.com' |
| **Subject:** | FW: Notice of Infraction at 1315 Irving St. NW |

| | |
|---|---|
| **From:** | Chang, Deanna (ENRD) |
| **Sent:** | Friday, May 16, 2008 3:36 PM |
| **To:** | 'don.masoero@dcra.dc.gov'; 'linda.argo@dcra.dc.gov' |
| **Cc:** | 'adrian.fenty@dc.gov'; 'grahamwone@gmail.com' |
| **Subject:** | Notice of Infraction at 1315 Irving St. NW |

Please advise on when you intend to forward the Notice of Infraction to the Office Administrative Hearings. I denied the violations and requested an administrative hearing on **April 8, 2008**. As of **May 16, 2008**, OAH has not received the Notice of Infraction. Therefore my case cannot even be scheduled to be heard. In the event that you have no record of the notice, it is I700924, date of service 4/2/08, dated denied 4/08/08.

DCRA has determined, contrary to the DCMR, that my building permit has expired, and is now sitting on my paperwork so that I cannot get this resolved.

Please advise as to the cause of the delay in forwarding the paperwork to OAH, as well as when it will be forwarded.

Deanna Chang

## Chang, Deanna (ENRD)

| | |
|---|---|
| **From:** | Chang, Deanna (ENRD) |
| **Sent:** | Monday, May 19, 2008 12:59 PM |
| **To:** | 'Thigpen, Sarah (DCRA)' |
| **Cc:** | Jones, Tamika (DCRA); Wilson, Deidra (DCRA); Anderson, Vanessa (DCRA) |
| **Subject:** | RE: 1315 Irving st N.W. IQ# 226325 |

I spoke with OAH on Friday May 16, and was told they have no record of having received my file. Please send me a copy of whatever documentation you have indicating it was sent on May 12. Thank you.

---

**From:** Thigpen, Sarah (DCRA) [mailto:Sarah.Thigpen@dc.gov]
**Sent:** Monday, May 19, 2008 12:41 PM
**To:** Chang, Deanna (ENRD)
**Cc:** Thigpen, Sarah (DCRA); Jones, Tamika (DCRA); Wilson, Deidra (DCRA); Anderson, Vanessa (DCRA)
**Subject:** 1315 Irving st N.W. IQ# 226325

Dear Ms. Chang
This letter is written in response to your inquiry to the Department of Consumer and Regulatory Affairs (DCRA), in which you asked this agency to investigate concerns regarding possible illegal construction work at 1315 Irving ST N.W. .

An inspector from DCRA's Illegal Construction Enforcement Unit (ICE) visited the above-reference address on March 19, 2008 and issued a Stop Work Order (SWO) with a fine of $5,000 for working without a building, demo permit and failing to post the permits. Subsequently, your case was sent to the Office of Administrative Hearings on May 12, 2008 for further processing. Please contact the Office of Administrative Hearing at (202) 442-8167 to find out more about your case.

If you have additional questions or concerns, please contact me at (202) 442-7867, you may also contact Greg Okure, Program Manager for the Illegal Construction Enforcement Unit at (202) 481-3541 or by e-mailing to Stopwork@dc.gov.

Sincerely,

Sarah Thigpen, Staff Assistant
ICE

IQ # 226325

## Chang, Deanna (ENRD)

**From:** Morelli, Jeffrey [Jeffrey.Morelli@NCMC.com]

**Sent:** Thursday, May 22, 2008 9:27 PM

**To:** Chang, Deanna (ENRD)

**Subject:** Mortgage

Deanna
I wanted to update you where things stand. I spoke to Mark Kessler, the appraiser, and he indicated that you are doing some pretty extensive renovations. I know you mentioned you were working on the house but I did not realize the extent. The problem is most mortgage programs require the house not be under construction. I tried to see if there is any way to get an exception but at this point there isn't. How long do you think it will take to finish the work?

**Jeff Morelli**
**Loan Officer**
**FNMC, a division of National City Bank**
7852 Walker Dr, #400
Greenbelt, MD 20770
(O)301-220-1000 X231
(F)301-345-4927

```
-------------------------------------------------------------------------------
***The following annotations have been made
-------------------------------------------------------------------------------
```

Please be aware that e-mail is NOT a secured communication vehicle, and that others may in certain circumstances be able to view its contents. As a result, while we are happy to provide this information by e-mail, we do NOT conduct actual business transactions by e-mail. Please contact the sender directly if you have any concerns about this message. All loans subject to credit approval and property appraisal. Equal Housing Lender. This communication is a confidential and proprietary business communication. It is intended solely for the use of the designated recipient(s). If this communication is received in error, please contact the sender and delete this communication.



# **Bankrate.com**

## **30-year fixed mortgage refinance rates in DC Metro, DC**

If you are seeking a mortgage in excess of $417,000, recent legislation may enable lenders in certain locations to provide rates that are different from those shown in the table below. We recommend that you contact your lender directly to determine what rates may be available to you.

Use the tabs to view **multiple loan products**. Select the check boxes to compare **up to 4 lenders.**

| Fixed | ARM | Interest Only | | | | Compare |

**30 yr fixed mtg refi | 20 yr fixed mtg refi | 15 yr fixed mtg refi | 10 yr fixed mtg refi | 30 yr FHA mtg refi**

ADD TO COMPARISON                    **Total Lenders Selected:**

| LENDER | DATE | APR* | DISC/ORIG POINTS | RATE | FEES IN APR | LOCK | EST. PAYM'T | ADVERTISER COMMENTS |
|---|---|---|---|---|---|---|---|---|
| **Sort By:** ○ | ○ | ○ | ○ | ○ | ○ | ○ | ○ | |
| Countrywide Home Loans | 6/16 | 6.774 | 0.000/ 0.000 | 6.750 | $1375 | 30 | $3,665 | Need cash? Low rates. Ask for a No Closing Cost refinance loan++ |
| AimLoan.com | 6/16 | 6.402 | 0.000/ 0.000 | 6.375 | $1606 | 30 | $3,525 | Certified UpFront Lender! Rates & Good Faith Estimate Online 24/7 |
| Aurora Financial | 6/16 | 6.267 | 0.000/ 0.000 | 6.250 | $990 | 30 | $3,479 | Direct Lender- Tysons Corner, VA.Close in 7 Days! www.aurorafs.com |
| Mortgage Capital Associates | 6/16 | 6.516 | 0.000/ 0.000 | 6.500 | $950 | 30 | $3,571 | Satisfying Clients over 27 Years / $BILLIONS FUNDED |
| Citibank | 6/11 | 6.632 | 0.000/ 0.000 | 6.625 | $425 | 60 | $3,618 | |

ADD TO COMPARISON

If you believe that you have received an inaccurate quote or are otherwise not satisfied with the services provided to you by the lender you choose, please click here. Many lenders have different rates on their own Websites than those posted on Bankrate.com. In order to get the Bankrate.com rate, please identify yourself

as a Bankrate.com customer.

The rates above were collected by Bankrate.com on the dates specified. Rates are subject to change without notice and may vary from branch to branch. Rate/APR and terms may vary based on the creditworthiness of the individual and the extent to which the loan differs from the one used for Bankrate.com quotes. For criteria used in surveys of rates above, click here. For an explanation of abbreviations used in the column headers, click here. For an explanation of mortgage terms, click here. These quotes are from banks, thrifts, and brokers, some of whom have paid for a link to their own Web site, where you can find additional information.

**RESOURCES**
- Financial Literacy: Improve credit score
- Mortgage Basics
- 2007 Real Estate Guide

**TOOLS**
- Compare local mortgage rates
- Mortgage rate trend index
- Mortgage rate analysis

**SPONSOR LINKS**

**Affordable Homeowners Insurance** -- Protect Your Home With Liberty Mutual Insurance. Covers Fire, Theft, and More!

**Countrywide Home Loans** -- No Closing Cost Refi Options. No Points. No Hidden Fees. Call Today.

**House Payments Fall Again** -- $235,000 Mortgage for only $839/mo. Fed Cuts Rates to 2.00%! See Rates. No Credit Check Required!

**Refinance Rates at 5.19% Fixed!** -- $200,000 Mortgage For Under $699/Mo. Get 4 Free Quotes, NO SSN Rqd!

**Mortgage Refinance Rates at 5.5% FIXED!** -- $200,000 mortgage for $699/month. See lower payment NOW - No SSN reqd.

- advertisement -



News & Advice | **Compare Rates** | Calculators

**Mortgage** | Home Equity | Auto | CDs & Investments | Credit Cards | Checking & Savings | College Finance | Insurance

About Bankrate | Privacy | Online Media Kit | Partnerships | Investor Relations | Press/Broadcast | Contact Us | Sitemap
NASDAQ: RATE | RSS Feeds | Order Rate Data | Bankrate Canada | Bankrate China

* Mortgage rate may include points. See rate tables for details. Click here.
* To see the definition of overnight averages click here.

Bankrate.com ®, Copyright © 2008 Bankrate, Inc., All Rights Reserved, Terms of Use.

**Bankrate Privacy Policy**

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**

## DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS
### HOUSING REGULATION ADMINISTRATION

NEIGHBORHOOD STABILIZATION PROGRAM
POST OFFICE BOX NUMBER 37200  WASHINGTON, D.C.  20013-7200

## NOTICE OF VIOLATION

Notice No.:    139756_7

Thursday, June 12, 2008

Order for the correction
Of conditions at    3227 WALBRIDGE PL NW WASHINGTON DC

Ward:  1          Square:   2604          Lot:   0224          Cluster:   2

TO: DEANNA J CHANG

    3227 WALBRIDGE PL NW

    WASHINGTON, DC 20010

NOTICE:  A recent inspection of the premises listed was made by a representative of this Division in conformance with the District of Columbia Municipal Regulations - Title 14.  This notice is to inform you that the items indicated are in violation of existing laws and regulations. Accordingly, you are hereby ordered to correct these violations within the time specified below. If you fail to correct the violations in the time specified, the DCRA Civil Infractions Act of 1985 allows the Department of Consumer and Regulatory Affairs to impose fines for violations like the ones described herewith.  Other laws allow for criminal prosecution as an alternative.

**Housing Business License:**    Lic. No.: _____
Corporation Name: _____
Trade Name: _____
D.C. Resident Agent: _____
No. of Units: _____    Rental Accom. Reg. No.: _____

Cust. No.: _____
Billing Name: _____
Billing Address: _____
Agent's Address: _____
Date of License: _____

**Certificate of Occupancy:**
Registrant's Name: _____    Date of Registration: _____    C of O No.: _____

**NOTICE: The failure to abate any of the violations cited in this notice within the timeframe provided for abatement in the "Completion Time Limit Column" will result in the imposition of a re-inspection fee of $90.00.**

**IMPORTANT: See Last Page for Instructions**

| Sequence Number | OCI | DCMR14 | Description | Completion Time Limit from Date of Service | Amount of Fine |
|---|---|---|---|---|---|
| 1 | 16028 | 800.10 | Excessive vegetative growth or weeds exceeding ten (10) inches in heights is unattended or creates a dense area of shrubbery that is a detriment to the health, safety and welfare of the public; Sec. 800.10 M.R. Location: Front yard | 7 days | $500.00 |
| 2 | 16029 | 800.13 | Accumulation of trash on any premises for more than seven (7) calendar days shall constitute an unsanitary and unhealthy condition if it creates: harbor or concealment (including hiding places for person(s); deposit or accumulation or refuse or trash; harbor for rodents and vermin, or a refuge for snakes, rats or other rodents; noxious or an unpleasant odor; or fire hazard. Sec. 800.13 M.R. Location: Rear Yard (auto parts, rubber etc.) | 7 days | $500.00 |

**Potential Total Fine:**    **$1,000.00**

_____
Responsible Party Signature

_____
(Print Name) Responsible Party

Relationship to Resp. Person: _____

Date: _____    Time: _____

Notice Served By    Elsie Burchette

By Order of the Director of the Department of Consumer and Regulatory Affairs

_Elsie Burchette_    202 481-3571    418
Inspector's Signature    Telephone No.    Badge No.

Elsie Burchette
(Print Name) Housing Inspector

Inspection Date:    6/12/2008    Time:    11:00 am

Reinspection Date: _____    Time: _____

GOVERNMENT OF THE
DISTRICT OF
COLUMBIA

**DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS**
HOUSING REGULATION ADMINISTRATION

NEIGHBORHOOD STABILIZATION PROGRAM
POST OFFICE BOX NUMBER 37200  WASHINGTON, D.C. 20013-7200

# NOTICE OF VIOLATION

Notice No.:    139756_5

Thursday, June 12, 2008

Order for the correction
Of conditions at    3227 WALBRIDGE PL NW WASHINGTON DC

| Ward: 1 | Square: 2604 | Lot: 0224 | Cluster: 2 |
|---|---|---|---|

TO: DEANNA J CHANG

3227 WALBRIDGE PL NW

WASHINGTON, DC 20010

NOTICE  A recent inspection of the premises listed was made by a representative of this Division in conformance with the District of Columbia Municipal Regulations—Title 14. This notice is to inform you that the items indicated are in violation of existing laws and regulations. Accordingly, you are hereby ordered to correct these violations within the time specified below. If you fail to correct the violations in the time specified, the DCRA Civil Infractions Act of 1985 allows the Department of Consumer and Regulatory Affairs to impose fines for violations like the ones described herewith. Other laws allow for criminal prosecution as an alternative.

**Housing Business License:**    Lic. No.:
Corporation Name:
Trade Name:
D.C. Resident Agent:
No. of Units:                        Rental Accom. Reg. No.:

Cust. No.:
Billing Name:
Billing Address:
Agent's Address:
Date of License:

**Certificate of Occupancy:**
Registrant's Name:                        Date of Registration:            C of O No.:

**NOTICE:  The failure to abate any of the violations cited in this notice within the timeframe provided for abatement in the "Completion Time Limit Column" will result in the imposition of a re-inspection fee of $90.00.**

**IMPORTANT: See Last Page for Instructions**

| Sequence Number | OCI | DCMR14 | Description | Completion Time Limit from Date of Service | Amount of Fine |
|---|---|---|---|---|---|
| 1 | 13859 | D.C. CODE 6-804 | There exists a nuisance caused by an abandoned auto that is dangerous to the health and safety of persons in or about premises. Sec. 6-804, D.C. Code  Location: Rear Yard | 5 days | $2,000.00 |

**Potential Total Fine:**    $2,000.00

_____
Responsible Party Signature

_____
(Print Name) Responsible Party

Relationship to Resp. Person:

Date                    Time:

Notice Served By:    Elsie Burchette

By Order of the Director of the Department of Consumer and
Regulatory Affairs

_Elsie Burchette_ ____ 202 481-3571 ____ 418
Inspector's Signature            Telephone No.    Badge No.

Elsie Burchette
(Print Name) Housing Inspector

Inspection Date:    6/12/2008            Time:  11:00 am

Reinspection Date:                    Time:

## CERTIFICATE OF SERVICE

I, Deanna J. Chang, do hereby certify that on this date I served the foregoing "Plaintiff's

Reply to Defendants' Opposition to Motion for Preliminary Injunction" by email and

First Class Mail on:

Chad Copeland
Assistant Attorney General
441 Fourth Street, NW
Suite 600 South
Washington, DC 20001
chad.copeland@dc.gov

_6/17/08_